The Honorable, the Judges of the United States Court of Appeals for the Fourth Circle. Thank you, Your Honors, and may it please the Court. The question in this case is whether the Board erred by failing to order a new hearing before a different immigration judge. The Court should hold that it did for two reasons. First, the Board proceeded on the assumption that my client was required to establish a due process violation to receive such a hearing when, under matter of YSLC, he was not required to establish a due process violation. Second, and even assuming that he was required to establish a due process violation, he was deprived of a fair hearing because the immigration judge abandoned her role as a neutral adjudicator. Unless the Court prefers otherwise, I will address the arguments in that order. Now, there is no question that the due process clause establishes the floor when it comes to measuring the fairness of a removal hearing. But the Board, of course, can elect to hold immigration judges to a higher standard of conduct. And that is what the Board did in matter of YSLC, which found that a new hearing was warranted because the IJ did not comport himself in a manner that met the, quote, high standards expected of immigration judges. Now, conceivably, the Board did not elaborate on what those standards are. But the facts of the case make clear that a due process violation is not required for a non-citizen to receive a new hearing. And we know this because at no point in matter... Yes? So what is the basis for YSLC? Oh, well, we believe the Board has supervisory power in order to set a higher standard in determining when an immigration judge's conduct crosses the proverbial line. Can you give me some other cases where they've done that? I think maybe you're right, but... Well, a matter of Y... Not YSLC-type cases, but other cases where there is some administrative authority that makes an actual decision. Well, there is certainly a slew of unpublished decisions. But other than matter of YSLC, the Board has not spoken again in a precedential decision in a case involving a claim that an immigration judge... that an immigration judge's misconduct by itself warranted a new hearing. Well, any other... It doesn't have to be this particular fact situation, but any other time where you see the Board using some sort of administrative authority to give relief to a person? Sure. Well, there have been... There have been a slew of unpublished decisions which I could... How about a published? No, conceivably there have not been any other published decisions. I can see that. But we think YSLC establishes that no due process violation is required because at no point in that decision did the Board find that the non-citizen either had been deprived of a fair hearing or that he suffered any prejudice. And frankly, I don't think any court would find that the conduct in YSLC violated due process. The conduct had nothing to do with the merits of the case, and it was limited to a single exchange in which the IJ facetiously pretended that the non-citizen was an expert witness. And the Board said that the non-citizen was entitled to a new hearing simply because of the insensitive and belittling nature of the IJ's remarks, and regardless of whether he was ultimately found to qualify for relief from removal. A lot of the opinions that YSLC cites are due process opinions. Some of them are, but I would note that the two cases that it cites immediately after the proposition in question, that would be, I'm looking on page 691 of the decision, and it cites the Second Circuit's decision in Ali and the Third Circuit's decision in Sukhwan Putra. Those decisions mentioned due process, but neither of them made any finding with regard to prejudice, which of course is required in the due process analysis. But I think the clearest reason why a due process violation is not required for the Board to order a new hearing is that it would prevent the Department of Homeland Security from ever receiving a new hearing if an IJ belittled one of its attorneys or witnesses. And that is because the due process clause only protects private individuals from government misconduct. It does not protect the government from government misconduct. So if the Board could only order a new hearing- I'm not sure the government should be protected from government misconduct. Well, I think certainly if an IJ belittled a DHS attorney, I would think that DHS would be within its rights to ask the Board for a new hearing if the same conduct would entitle an alien to a new hearing. I certainly agree that the due process clause does not protect the government, but if that was the rule, then DHS would have no recourse in any case. Now the government for its part does not dispute that the Board can hold IJs to a higher standard of conduct than due process requires, and it does not contend that matter of YSLC requires a due process violation or that the IJ's conduct in that case violate a due process. The only argument it really makes on this front is that the IJ's conduct in this case was not as bad as the conduct in YSLC. But as I said at the outset, the Board in this case did not acknowledge YSLC, and it instead retreated our request for a new hearing as a due process claim. So we think under the ordinary remand rule, the best course of action would be for this court to remand the record to allow the Board to address our claim under YSLC in the first instance. But if the court does wish to reach the merits, we would ask it to find that the IJ's misconduct in this case was at least as egregious as the misconduct in YSLC. And that is so both because of the outburst during the hearing and because of the IJ's actions following the hearing. So with respect to the outburst during the hearing, we think the IJ's remarks were even more belittling than those in YSLC. After my client testified about his diminished fluency in the Spanish language, the IJ cut him off to say she found his testimony, quote, so incredible, it's laughable. And then she later told his attorney, quote, I don't even know why you went there. I mean, it sounds so stupid, honest to God. So, Your Honors, whatever the standards expected of IJs are, they do not permit them to insult the intelligence of people in their courtroom. You know, judges, of course, are not required to extend the same courtesy to litigants. Litigants are required to extend to judges. But there is still a line that judges cannot cross, and we think the IJ crossed it in this case. And contrary to what the government suggests, we think it makes no difference that matter of why YSLC involved a minor, IJs, of course, should be particularly sensitive in cases involving minors. But the board said in YSLC that the IJ's conduct would have been inappropriate towards any non-citizen. So the board itself did not view the minor's age as dispositive. If the court has no additional questions about the YSLC claim, our second argument is that the IJ's conduct, yes. The only question I have is to what extent did you really raise that issue? The YSLC claim? You didn't really raise it, the standalone YSLC issue in your brief. What you seem to say is it's well settled that the alien's inside of the United States or protected by due process. We certainly did cite YSLC in our brief to the board. I can see that our primary argument was that the board should simply grant my client's application on the merits, and that was, as a practical matter, my client had already been detained for nearly two years at that point. So the ultimate goal was to have him receive relief rather than to be remanded for another hearing and potentially another two years. And you did this below? I'm sorry? You did all this below? Yes. Well, we certainly, we said that a new hearing is warranted under matter of YSLC, and even in the conclusion of our brief, we said, after asking the board to sustain the appeal and reverse the denial of cancellation, we said, alternatively, the board should remand the record for further consideration of respondent's application by a different immigration judge. And we did there, I can provide the pin site on rebuttal, but we certainly did ask for a new hearing under YSLC. With respect to the due process claim, I would like to just clarify at the outset the precise nature of the due process violation that we're alleging. We do believe that the IJ violated due process by ultimately considering the police report, but the claim we're making in this case is that the IJ abandoned her role as a neutral adjudicator by seeking out the police report in the first place. So to see the distinction, just imagine that the police report was placed in the record due to a clerical mistake, and the IJ relied on it without realizing that it had never been submitted into evidence. In that scenario, we could still argue that due process was violated by the consideration of the report, but we could not make a claim that the IJ abandoned her role, abandoned her neutrality by seeking the evidence out. But in this case, of course, the IJ did affirmatively seek out the evidence, and by definition, a judge who goes affirmatively looking for evidence has abandoned their role as a neutral adjudicator. And we think the fact that the IJ abandoned their role as a neutral adjudicator was only confirmed by the fact that she failed to even notify my client that she intended to consider the police report or give him an opportunity to respond. The government says you are not entitled to due process rights because the cancellation of removal is discretionary. How do you respond to that? Thank you, Your Honor. While this court has held that non-citizens cannot raise due process challenges to statutes involving discretionary relief, and while it held that non-citizens do not have a due process claim, it held that non-citizens who have sought discretionary relief cannot raise due process claims with regard to the procedures used in their specific case. To the contrary, in at least three cases, Rusu in 2002, a Neiman in 2008, and a Temkin in 2020, this court has considered due process challenges to the denial of asylum, which of course is also a discretionary form of relief. And I think if the government's argument was correct, it would mean that aliens applying for cancellation of removal, asylum, or any other form of discretionary relief could not raise any challenge whatsoever to the neutrality of the immigration judge under any circumstances, even if, for example, the immigration judge used a racial epithet during the hearing, or even if they had a blatant conflict of interest, such as being married to the prosecutor for DHS. And we think that simply cannot be the correct rule. So we would ask this court to clarify that non-citizens seeking discretionary relief can challenge the procedures used in their cases no less than any other non-citizen can. We wouldn't have to go there, because your answer to, excuse me, one of my earlier questions about what would be the basis for this rule if it wasn't the due process clause, remember? Yes, certainly. Yes, certainly. If the court resolves, the court doesn't need to reach the due process claim if it grants our first argument involving matter of YSLC. Right. But if the court does reach the due process claim, the question would be prejudice. And we would ask the court to find out if my client was prejudiced. Now, the government claims that he was not prejudiced because the board did not consider the police reports at issue, and it upheld the IG's decision after applying to NOVA review. But we think the former argument is irrelevant, and the latter argument is incorrect. Because our due process claim is not tied to consideration of the police report as such, it does not matter whether the board considered the police report. All that matters is whether the IJ served as a neutral adjudicator. And the Supreme Court has held that a neutral appellate body cannot cure prejudice arising from a child judge who is not neutral. That's from the Monroeville case, which we cite in our briefs. But in any event, the board did not truly make an independent determination in this case with regard to my client's application. While it did apply to NOVA review to the IJ's ultimate discretionary determination, it applied clear error review to her factual findings, including the finding that there was a possibility that my client could relapse. So the government cannot claim that my client suffered no prejudice from the IJ's failure to serve as a neutral adjudicator when the board deferred to the factual findings of the same IJ whose neutrality is in dispute. And so if the court agrees that the board's determination did not itself cure any prejudice, the only question is whether there is a reasonable probability that a different IJ would have granted my client's application. And on that question, the government doesn't dispute that there is such a probability. Although my client has a serious criminal record, he also has extensive positive equities, including three U.S. citizen children. And most importantly, before the IJ reviewed the police reports, she said at the end of the hearing that her decision could go either way. So we think this is a case where the record makes clear that there was prejudice. Now one argument we considerably did not raise in our brief is that prejudice should be either automatic or presumed when an IJ is found not to be a neutral arbiter. In the criminal context, for example, the lack of a neutral judge is considered structural error that automatically entitles the defendant to a new trial. So because we didn't make that argument, we would ask the court to reserve that question regardless of whether it finds that the petitioner did experience, did suffer prejudice in this case. If the court has no further questions at this time, I'll reserve for rebuttal. All right. Thank you, counsel. Ms. Volker. Good morning, your honors, and may it please the court, Captain Volker for the Attorney General. I'm going to address the question about matter of why SLC first. We contend that matter of why SLC is not implicated in this matter, and there's no evidence in the record that the board failed to consider it or ignored case law. It just didn't cite to it because it's not implicated in this matter. And I want to point you to the record to show you what the petitioner actually presented to the board. So if you look at page, I think 47 of the record, petitioner, and I will, I'm sorry, 47. Can you hear me, your honor? I still didn't hear what the number was. Oh, 47. Thank you. You're welcome. So I'm going to start at the bottom last paragraph. While the immigration judge may have acted in a largely professional manner during the appearance that she could not partially adjudicate respondent's case. So then the petitioner goes on to talk about her consulting those police reports. And it appears he's making an argument that she's become biased because of extrajudicial evidence. So he cites the matter of why SLC, but I don't think that was the most appropriate case for the argument he was making before the board. And I think the board actually does a really good job of pointing the reader to matter of exam and matter of G for the proposition when someone's claiming that an IJ may have become biased because of some extrajudicial source or evidence. Now, I'm not sure if these police reports are completely extrajudicial, but I think the point of the matter is that it's when something outside of the main proceedings may affect the immigration judge. And I think it would have to develop a personal bias. So then he goes on to talk about the attorney advisor and how the memo that accidentally got included in the decision that was sent to the petitioner. But I'm going to bring you right back to 47. And that first clause when he's saying while the immigration judge may have acted in a largely professional manner during the immigration hearing, he drops down to a footnote where he points out and basically says that the IJ acted inappropriately in that little interaction about the Spanish language and whether petitioner had full control of the Spanish language in her comments. He asks, he doesn't cite to any case law there. He doesn't cite to matter of YSLC. He doesn't make an argument about her belittling or being hostile. He doesn't go there. He doesn't cite to any case law on that footnote. He says he believes the outburst alone is enough to remand. And if the board doesn't agree, at least reprimand the judge for those comments. So now I'm going to bring you to page five of the record, and that is the board's decision. And it's the last paragraph with the due process arguments where they're addressing the process arguments. And it's probably two-thirds down at furthermore. Furthermore, although we do not condone the IJ's offhand remarks in the one instant noted by the respondent who is the petitioner now, the record as a whole indicates she behaved in a professional and impartial manner throughout the course of the proceedings. The board then cites the transcript, cites the respondent's brief footnote. Then it goes on to say, therefore, we conclude that the respondent was afforded a fair hearing. There is no indication that the immigration judge actions amounted to a violation of due process. Then they cite to matter of G and matter of exam. So I really don't believe that matter of YSLC was implicated in this matter. And now before the court, they're making more of a issue about the immigration judge comments, and they're using YSLC for the proposition that she didn't act in accordance with how immigration judges should by looking at the police reports. I'm not going to defend the immigration judge. I think that's all a fair argument, but you also could read the footnote as separate and apart because it isn't a footnote. I mean, you know, we judges and lawyers use footnotes all the time. And that the board is responding to that, but never does respond to the argument in text, which says, for this reason alone, the immigration judge did not meet the high standards expected of immigration judges, quoting YSLC. Okay, so what I would, the way we would look at it would be for this reason alone, meaning that she sought out those after the hearing went out and looked at the police reports. I would have, I attribute it to that site. But if you disagree, then you're out of extra prerogative. But my main point was saying that he didn't make this big argument about the IJ being decorum of immigration judges. And there's really no indication that the I, that the board didn't consider that and find that this case was implicated that matter of G and matter of exam were more appropriate because really before the board, his main argument was that the IJ went and looked at these police reports from the prior immigration judge hearing that were in the background evidence of a different proceeding. So when the board was looking at it, it wasn't asked to find that the IJ belittled anyone. And to be honest, when the board almost echoes the petitioner's comment that, I'm sorry. Okay, the board almost echoes exactly what the petitioner says that the IJ acted largely in a professional manner or during the individual hearing, the board's not going to find more. The petitioner kind of conceded that in our view. And had he argued more that he found that the IJ was hostile, belittled, and maybe then it would be more of a case for matter of YSLC. And I tried to do, I didn't see any case. I don't think this court has cited to matter of YSLC. And that's why we had to go out of circuit to look at the Serrano-Alberto case from the Third Circuit. That case really does a really good job of grappling with YSLC. And it goes through and analyzes three cases in the Third Circuit, two Wang and Chan, which are when they find complete IJ bias. And actually when you read them, it's quite jaw-dropping to see the conduct. And then they compare that to another case. And it starts with an A, I forgot the name of it. Abu, I know I have it here. It's Abdul Rahman. It's right in the Serrano-Alberto case. In that case, the IJ is just more impolite, but is not found to be biased or hostile. So we were kind of looking at the Serrano-Alberto case to try to distinguish how even if you were to say that YSLC should have been considered, it wasn't implicated because it didn't, we don't feel that the IJ in, I mean, we don't condone her remarks, but it didn't have the ring of hostile and chilling as the other cases. And in fact, I just want to comment. When you read the YSLC case, they actually point to the Cham Third Circuit case that is in Serrano-Alberto. And they cite to it because it is a due process violation. Because when you find that an IJ conducts themselves in a manner that has a chilling effect on testimony, you can't have a full and fair hearing. So they cite to Cham on page three of my printout, but I'm trying to find the pinpoint. It's 690. And they cite to Cham for the premise that when an IJ, that an alien is entitled as a matter of due process to a full and fair hearing. And when it's found that an IJ acts in a manner that's hostile or could intimidate the alien individual, they can't have a full and fair hearing because there's a chilling effect on a testimony. So YSLC actually cites to the due process cases from the Third Circuit. And as Judge Motz pointed out, any time the cases, any circuits that have cited to YSLC, they've cited for due process reasons. Or they've cited for there's another premise for YSLC is when an immigration judge improperly invokes the federal rules of evidence. But did the board in YSLC ever definitively state that the immigration judge conducted a due process clause violation? In YSLC? That his conduct violated the due process clause. Did the board ever state that definitively, that that immigration judge, judge's conduct violated the due process clause? So on page six, I think it's 690, when they address it, they don't condone the IJ's treatment. They've stressed that IJ proceedings should expect dignity, respect, courtesy, and fairness in a hearing for the immigration judge. They cite to CHAM out of the Third Circuit stating that such terms are not merely advisory or aspirational and alien is entitled as a matter of due process to a full and fair hearing. Then they go on to say conduct by an immigration judge that can be perceived as bullying or hostile can have a chilling effect on an individual's testimony and thereby limit his or her ability to fully develop the facts of their claim. And then they cite to Wang, which is the other due process case out of the Third Circuit. Your honors, when I was looking at case law for this, it's the Third Circuit seems to have a lot of immigration judge, I would say, would this be considered a bias or hostile? I understand the Third Circuit's position on it, well and clear, but the question is when we look at actual the case of YSLC, is there a definitive statement that immigration judge's conduct violated due process? And if it didn't, then they would seem to indicate that Holden is distinct from and independent of the due process clause. And one of the things building on my colleague's question that indicates to me that YSLC is not a due process decision, although I think it's close, I think there's stuff in both ways, is that there's no prejudice analysis conducted. And that, of course, would be part of the analysis if this was a due process violation. Correct, your honor, but do you get to prejudice if you find the first prong is violated? Do you not have to get to prejudice if you find there is no full and fair hearing? I thought we were talking about the question of whether YSLC was a due process case or not. So remember you make, I think that the government says it is and the appellant says it is not. It seems to me that although it's close, it probably is not because there is no prejudice analysis. Well, your honor. Which there'd have to be for a due process violation. I didn't read that in conjunction with what was actually held. We conclude this hearing was not conducted in a manner that meets the high standards expected of immigration judges. Then it goes on to vacate the judge's decision or demand for a new hearing. There's nothing in there that talks about due process explicitly, much less prejudice that would be necessary to get it up. Your honor, I guess I'm just confused because I would assume that if you found that the IJ tainted the proceedings, you didn't get a full and fair hearing and I would have assumed that also them citing to the due process cases. Well, that would kind of reduce what is necessary to get there if all you have to do is say the judge just didn't meet the high standards expected of an immigration judge. That does sound like a supervisory role. That would be pretty broad. Might say about us. Never your honor. Well, your honor, I mean, all we could go by is our view of the board's decision, which I mean, you've found us wrong in the past, but that was our view. And we can also only go by how we've seen other circuits interpret it. And so that would be why we would lean towards that probably. Additionally, I wanted to just comment. I know that the petitioner pointed out when the board found that the immigration judge was improper without analyzing it and just said we're not going to consider the police reports and then went and did a de novo review. As you all know that the board can only look at the matter of discretion de novo. But in order to evaluate any challenges to factual findings, they can only look at the clear error review. And so that's what the board did there. And when I was trying to figure out how to maybe find an analogy, it's very much like a reversal in a way. So like, for instance, I came across the love case and I believe teachers Gregory was on that panel. And the IJ found cancellation and then DHS appealed it. The board sustained DHS's appeal, did a de novo review, but they had to rely on the factual findings of the IJ. And I can't remember if they found any of the factual findings had clear error or not. But in the end, they ended up reversing the IJ and finding and denying cancellation as a matter of discretion. So I guess my point would be when you're talking about clear error on that one instance about the relapse issue, if the petitioner argued to the board that he challenged that factual finding, the board can't look at that and evaluate it under de novo. It has to look at it as clear error. And because it found no clear error in that determination, that doesn't spoil the de novo review, I would argue. And, Your Honors, if you have any more questions, I'd be happy to try to answer them. All right. Otherwise, we would ask that you affirm the board and deny the petition. Thank you. Thank you, Ms. Volker. Thank you. Mr. Honegrant, you have some time reserved. Thank you, Your Honor. I recognize, of course, that exhaustion arguments are jurisdictional. I would note, though, that the government made no exhaustion arguments in its brief. So we would preserve the argument that any exhaustion argument was waived. And I would also note there is a circuit split over whether the exhaustion argument is, in fact, jurisdictional. More importantly, the board itself reached the issue and said the outburst was not sufficient to require a new hearing. And every circuit has held that when the board addresses an issue sua sponte, it's considered exhausted. And just finally on exhaustion, I would point the court to the Ramirez decision from 2018, which said that the exhaustion requirement only prohibits the consideration of basis for relief that were not raised below and of general issues that were not raised below, but not of specific subsidiary legal arguments or arguments by extension that were not raised below. With regards to matter of YSLC, Judge Motz, I can provide a citation for the source of the board's supervisory power. And that would be 8 CFR 1003.1 D12. And that's a regulation that this court has considered on many occasions. And it authorizes the board to take any action that is appropriate and necessary for the disposition of a case. And we think that would plainly incumbent the authority to remain a case to a different immigration judge. So what I am looking for, and I'm really hopeful you can show me where it is, is where you said in your papers to the board that the language that you complain about violating YSLC, were you even raised that? Well, in the footnote that was being discussed, we certainly raised it. We quoted from the colloquy and we said that this outburst is sufficient on its own to warrant remand to a new immigration judge. Well, it's not exactly worded that way. We have this discussion of it in the footnote, to be sure. And then we have, to begin with, we have the discussion in the text. And the text seems to say, for this reason alone, not referring to the footnote. The footnote is the page before footnoting something else. So I'm just, since this seems to be the heart of your argument in front of us, I'm just a little lost here. Sure. Well, we think there are two independent grounds for a remand under YSLC. The outburst during the hearing, which we addressed in footnote four on page 47 of the record, and the consideration of- 21 of your papers. So it doesn't get a lot of attention, but go ahead. And then the other one was at the top of page 48 of the record, page 22 of our brief, which we also say, for this reason alone, the immigration judge did not meet the high standards expected of immigration judges. That's, of course, referring back to the consideration of the police report. But again, because the board addressed this issue, addressed the issue anyway, we think the board was plainly on notice of our argument. I can see the argument could have been raised better below, but the board was on notice and it addressed the argument. And especially given this court's decision to Ramirez, we think that's sufficient for exhaustion. And to the extent, your honor, you think it's close or unclear whether a matter of YSLC requires a due process violation, we think the correct remedy would be to remand for the board to clarify that exact question. The only other point I was going to make was that the police reports themselves, the other judicial source, we think they clearly would be because they were not introduced during the hearing, even though they were introduced during my client's prior removal proceedings, they were not introduced during the current round of removal proceedings. So is there such a thing as the record? Like, here we have the record before the, in the immigration. In other words, were they in the record? They were in the record of the prior case, but not this case. Was the record both of those? No, no, they're separate and apart. That's why it doesn't appear in the administrative record before the court. Just as when a defendant is charged with, goes to one criminal trial and then years later goes to another criminal trial, the record from the first criminal trial is not part of the record from the second criminal trial. So how did IJ find this? Presumably she summoned the record from storage, wherever it was, and looked through it. I can't imagine any other way she would have found it. That's why it's not in the administrative record, and it wasn't what we received as part of our FOIA request for this record. If there are no, yes. So you spent a lot of energy saying you actually did bring up this YSLC as precedent. And yet, even if you didn't, and we conclude to some extent YSLC did not implicate due process claim can be considered even if you didn't do it. And if that falls in line, the question then would be whether the question of the partiality of the judge and the prejudice from it was adequately raised. Is that fair, what I'm saying there? If I understand your question, yes. But I believe we certainly adequately raised it. I mean, it was not our primary argument concisely, but it was our separate argument that the you spent a lot of time, because it's real difficult for me, at least, maybe Judge Markson could have the same problem as to the extent it was actually raised independently on YSLC, particularly as the precedent. But if we went further and delved into the question of what was the holding in YSLC, did it actually implicate the due process clause violation? And there's this broader statement about it, the judge there not meeting the standards. That then opens the door, perhaps, for an independent consideration of due process, irrespective of YSLC. Doesn't that get you kind of into discussion? But it's been around. I'm trying to understand, help me out. It sounds like your position, if we don't believe you raised that independent claim on YSLC as precedent, then you seem to feel like there's no avenue. But I'm trying to see if you follow the perspective that YSLC does not deal with due process, then it's there. I would say if the court finds that we did not exhaust the claim involving YSLC, I think we certainly exhausted the claim involving due process, and even the government does not suggest otherwise. So we would ask the court to rule in our favor on the due process claim. Thank you, your honors. Thank you. Thank you both. Thank you very much for your arguments. We can't come down and greet you. No, you're virtual. We can't do it either way. But please know that we appreciate your arguments here. And thank you so much and wish you well and be safe. Thank you.
judges: Roger L. Gregory, Diana Gribbon Motz, James Andrew Wynn